No. 3057

Second Circuit

---

CUMMINGS v. GRIGGS

---

(Nov. 10, 1927. Opinion and Decree.)

---

(*Syllabus by the Court*)

1. **Louisiana Digest — Exemptions From Seizure—Par. 11.**
One employed by a railroad company to patrol its freight yards and to nail up the doors of freight cars where they have become loose and to reseal such doors where the seals thereto are broken is a laborer within the meaning of Article 644 of the Code of Practice whose wages as such are exempt from seizure.

State, ex rel., vs. Land, Judge, 108 La. 512, 32 South. 433.

Schroeder vs. Collins, 113 La. 778, 37 South. 722.

Cole vs. Grant, 144 La. 915, 81 South. 398.

Appeal from the City Court of the City of Shreveport, Louisiana. Hon. David B. Samuel, Judge.

Action by H. C. Cummings against T. B. Griggs. Texas & Pacific Railway Company, garnishee.

There was judgment for plaintiff and defendant appealed.

Judgment reversed.

Dimick & Hamilton, of Shreveport, attorneys for plaintiff, appellee.

Crow & Coleman, of Shreveport, attorneys for defendant, appellant.

REYNOLDS, J. Plaintiff recovered judgment against defendant in the City Court of the city of Shreveport on February 23, 1926, for the sum of $200.00 with interest thereon at the rate of 8% per annum from June 25, 1923, and 10% on the amount of principal and interest as attorney's fees, and the sum of $101.40 owing to him by the garnishee Texas & Pacific Railway Company was seized. Defendant moved in court a quo to dissolve the garnishment on the ground that the wages seized were earned by him in the capacity of a laborer and under Article 644 of the Code of Practice were exempt from seizure. Plaintiff answered the motion denying that plaintiff was a laborer and that the wages were exempt from seizure. Defendant claimed $50.00 damages for wrongful seizure.

On these issues the case was tried and there was judgment denying the plaintiff's claim of exemption and he appealed.

## OPINION

The only question to be decided is, was the defendant a laborer within the meaning of Article 644 of the Code of Practice exempting laborers' wages from seizure.

The only evidence as to the character of work defendant was performing is the testimony of the defendant himself. He testified (Evidence, pages 28 et seq.):

"Q. How did you earn those wages; what were you doing; what was the nature of your work?
"A. Special officer for the railroad.

\* \* \* \*

"Q. What were your actual duties?
"A. My duties were to watch the merchandise cars; if I found any open, to take hammer and nails and cleat and nail the door up, and nail the cleat on there, and rewire the door and make report of that to the chief.
"Q. What chief?
"A. Special agent.
"Q. Where is he?
"A. At Dallas, Texas.
"Q. Did your duties require you to look after thieves, robbers, things like that, or any one that might be trespassing on the property of your employer?
"A. Yes, sir.
"Q. Suppose that you found robbers or trespassers or pilferers on the property of your employer, what did you do?
"A. Well, if they were just trespassers or anything like that, I order them off of the right of way and make them get off; and if I catch them pilfering any of the cars, then I bring them to town and put them in jail and wire the chief to come up and make the charges as he sees fit.

\* \* \* \*

"Q. When—what part of the day did you usually take up in looking after this property?
"A. I start about seven o'clock in the afternoon and quit about six o'clock in the morning.

"Q. Your work is practically all at night then?
"A. Yes, sir.
"Q. In what attitude did you do this work? I mean by riding, walking or standing, or how?
"A. I have to patrol the yards, walking up and down from one end of the yards to the other, and I pull the seals on these cars to see if they are broken or not, and I put them back together as if they were good.

\* \* \* \*

"Q. Suppose in the discharge of your duties you were to find an obstruction on the railway track, like a crosstie or anything, what would you do?
"A. I would move it.
"Q. Would that be a part of your duty?
"A. Yes, sir."

This evidence indicates that defendant was not a skilled laborer. No special education or training was required for the proper performance of his duties. His work was only that of an ordinary laborer.

It was held in the case of Schroeder vs. Collins, 113 La. 778, 37 South. 722, that the duties of a switchman were those of an ordinary laborer and that the wages of such an employee were exempt from seizure, and we are unable to see wherein the work defendant was performing for his employer required more skill or experience than does the work of a switchman.

Under the law and the evidence the judgment appealed from is erroneous.

Defendant asks for $50.00 damages for wrongful seizure of his wages; but the record contains no proof of any damage sustained by him by reason thereof.

It is therefore ordered, adjudged and decreed that the judgment appealed from be annulled, avoided and reversed, and it is now ordered, adjudged and decreed that the writ of garnishment served on the

garnishee Texas & Pacific Railway Company be recalled and quashed and the seizure made thereunder released.

It is further ordered, adjudged and decreed that defendant's demand for damages against plaintiff for wrongful seizure be dismissed as in case of non-suit.