Eduardo G. Ortiz, demandante y apelante, *v.* Comisión de Indemnizaciones a Obreros, demandada y apelada.

No. 3961.—*Visto:* Noviembre 19, 1926.   *Resuelto:* Junio 3, 1927.

1. Patrono y Empleado—Ley de Indemnizaciones por Accidentes del Trabajo—Naturaleza y Fundamentos de la Responsabilidad del Patrono—Personas a Quienes les Son Aplicables las Disposiciones de la Ley—Oficinistas.—Atendida la naturaleza de los servicios prestados por el demandante se resolvió que no siendo él un obrero y sí un oficinista que trabajaba en oficina en la que no se usaba maquinaria, no le eran aplicables las disposiciones de la Ley por Accidentes del Trabajo, No. 62 de 1919 (p. 334), según fué enmendada por Ley No. 61 de 1921 (p. 473).

2. Patrono y Empleado—Ley de Indemnizaciones por Accidentes del Trabajo—Naturaleza y Fundamentos de la Responsabilidad del Patrono—Preceptos Estatutorios—Interpretación.—Las máquinas de escribir y otras semejantes usadas en una oficina corriente, no son las máquinas a que se refiere la sección 2 de la Ley No. 62 de 1919 (p. 334) según quedó enmendada por Ley No. 61 de 1921 (p. 473).

3. Patrono y Empleado—Ley de Indemnizaciones por Accidentes del Trabajo—Naturaleza y Fundamentos de la Responsabilidad del Patrono—Personas a Quienes les Son Aplicables las Disposiciones de la Ley—Oficinistas.—El que un oficinista sufra un accidente mientras viaja en dirección al sitio en que debe practicar un inventario, porque ese trabajo le obligue a penetrar en sitios donde existan maquinarias, no cambia la naturaleza de su empleo.

Sentencia de *R. H. Todd Jr.*, J. (Ponce), declarando sin lugar la demanda, sin costas.   *Confirmada.*

*Arjona & Arjona*, abogados del apelante; *Hon. Attorney General George C. Butte* y *Arturo Ortiz Toro*, *Sub-Procurador*, abogados de la apelada.

El Juez Presidente Señor del Toro, emitió la opinión del tribunal.

Eduardo G. Ortiz reclamó de la Comisión de Indemnizaciones a Obreros la suma de cuatro mil dólares por los daños y perjuicios sufridos a consecuencia de cierto accidente que

le ocurriera siendo empleado de la Central Boca Chica y actuando dentro del curso de su empleo.

Investigó el caso la Comisión dos veces. La primera resolvió que el reclamante no estaba protegido por la ley especial sobre la materia y la segunda ratificó su anterior resolución. Apeló Ortiz para ante la Corte de Distrito de Ponce y ésta, después de oídas las pruebas, declaró la demanda sin lugar. No conforme aún, Ortiz estableció este recurso presentando sus abogados un hábil alegato en defensa de su reclamación.

Todo gira alrededor de la siguiente cuestión: ¿Era Ortiz un obrero, o un oficinista que trabajaba en una oficina o establecimiento mercantil en los que se usaba maquinaria?

[1] Que Ortiz era un empleado de la Central Boca Chica, no hay duda alguna, y que recibió orden del administrador de la central para practicar un inventario de todas sus existencias y que el 4 de octubre de 1922 salió para cumplirla y mientras viajaba en un Ford guiado por otro empleado de la central sufrió un accidente al parecer sin consecuencias pero que después las tuvo, parece claro.

Lo que está sujeto a controversia es en realidad de verdad únicamente la clase de empleo que Ortiz desempeñaba y las condiciones del sitio en que trabajaba. A este respecto la corte sentenciadora, después de un cuidadoso análisis de la prueba, concluyó que Ortiz era un oficinista y que en las oficinas en que trabajaba no se usaba maquinaria.

La regla aplicable está contenida en el artículo 2 de la Ley de Indemnizaciones por accidentes del trabajo de 1919, tal como quedó enmendada en 1921, Leyes de 1921, página 473, que dice, en lo pertinente, así:

"Artículo 2.—Las disposiciones de esta Ley serán aplicables a los obreros lesionados o que se inutilicen o pierdan la vida por accidente o enfermedades que provengan de cualquier acto o función inherente a su trabajo o empleo y ocurran dentro del curso de éste, por consecuencia del mismo. Se exceptúan los labradores que no sean empleados para trabajar con maquinaria movida por vapor,

gas, corriente eléctrica, fuerza animal o cualquier otra fuerza mo-
triz mecánica o instrumentos o herramientas cuyo uso no pueda ori-
ginar graves daños corporales, sirvientes domésticos y empleados
dedicados a trabajo de oficina en oficinas y establecimientos comer-
ciales en donde no se usa maquinaria . . .''

Respondiendo Ortiz a la siguiente pregunta: ''¿Cuál era
el empleo que tenía usted en la Central Boca Chica?'', que
le hizo su propio abogado, contestó: ''A la sazón yo era un
intermediario entre la central y la oficina; la central Boca
Chica que tenía una oficina en Ponce, en la calle Vives y
yo era un intermediario en la oficina; yo practicaba compras
de la central, yo practicaba inventario, tenía a cargo todas
las compras de la central en la Playa y en los distintos
puntos de la población, además practicaba pagos y hacía
algún trabajo en la oficina: ése era mi trabajo.''

Y según declaración de José Sánchez Parra, testigo pre-
sentado por Ortiz, la central tenía sus oficinas en la ciudad
de Ponce y sus establecimientos en el barrio Aruz o Capi-
tanejo del municipio de Juana Díaz, el trabajo de Ortiz en
la oficina consistía en llevar un libro en el que se daba
entrada y salida todo lo que se compraba y en hacer listas
en maquinilla, teniendo allí su escritorio. Todos los emplea-
dos entraban a la oficina de ocho a doce y de una y media a
cinco y media o seis de la tarde. Ortiz percibía un sueldo de
cien dólares mensuales, también trabajaba fuera de la oficina
haciendo compras para la central.

Declarando como testigo de la demandada, Guillermo
Vivas, administrador de la central, entre otras cosas dijo
que a Ortiz lo tenía empleado en el despacho de compras,
saliendo por la mañana a recorrer el comercio a ver quién
vendía más barato; que trabajaba en la oficina con todo
el personal; que llevaba el récord del almacén; que le or-
denó que hiciese un inventario de todas las existencias de
la propiedad, y que la oficina de la central estaba en Ponce
en una casa alquilada y sus propiedades radicaban en el
campo.

Siendo esto así, hay que reconocer que el trabajo de Ortiz dentro y fuera de la oficina y el que iba a realizar cuando ocurrió el accidente no corresponden a los que usualmente realiza un obrero.

*Obrero,* según dice el Diccionario razonado de Legislación y Jurisprudencia de Escriche, es "el oficial que trabaja por jornal o a destajo en las obras de las casas o en las labores del campo." El autor hace referencia a las palabras Artesano, Jornalero, Maestro y Menestral, que con excepción de Maestro tienen un significado fijo y bien conocido. El Maestro a que se refiere Escriche es "el que está aprobado en algún oficio mecánico, o lo ejerce públicamente, como maestro sastre, "maestro de coches".

En el texto inglés de la ley se usa la palabra *laborer.*

En el volumen cinco de Words and Phrases Judicially Defined, existen numerosas citas. La primera dice:

"Un obrero, un trabajador, tal como lo define Webster, es aquel que trabaja en una ocupación laboriosa; una persona cuyo trabajo requiere poca destreza, como distinta de un artesano; a veces se le llama 'un jornalero.' Los escribientes y dependientes, agentes, cajeros de bancos y todas las clases de empleados cuyo empleo está asociado con el trabajo y destreza mentales, no se consideran obreros. Cada ser humano que sigue una vocación legítima o que desempeña los deberes de cualquier cargo es, en un sentido amplio, un obrero. El Presidente de los Estados Unidos, el gobernador de un estado y los jueces de la Corte Suprema son todos hombres que trabajan, en el sentido de que hacen una buena cantidad de trabajo fuerte, mucho del cual requiere en verdad esfuerzo físico y muscular; pero al mismo tiempo no puede correctamente llamárseles obreros manuales, ni en el sentido popularmente dado a estas palabras, ni tampoco en el sentido en que la palabra 'obrero' fué usada en el estatuto que confiere a los trabajadores un gravamen sobre la propiedad de su patrono. Al determinar si un determinado dependiente o empleado es verdaderamente un obrero, debe tomarse en consideración la naturaleza del trabajo que realiza y debe clasificársele no de conformidad con la designación arbitraria que se le dé a su vocación sino con referencia a la naturaleza de sus servicios. *Oliver* v. *Macon Hardware Co.,* 25 S.E. 403, 405, 98 Ga. 249, 58

Am. St. Rep. 300; *McPherson* v. *Stroup,* 28 S. E. 157, 159, 100
Ga. 228.''

''Un obrero es el que labora con sus poderes físicos en el servicio
y bajo la dirección de otra persona por un salario fijo. *Blanchard*
v. *Portland & R. F. Ry.,* 32 Atl. 890, 891, 87 Me. 241; *Meands* v.
*Park,* 50 Atl. 706, 707, 95 Me. 527.''

Si se examina la ley de que se trata en su totalidad se
verá que el pensamiento del legislador estuvo enteramente
fijo en los obreros y que sólo a ellos aspiró a proteger, pero
aceptando, a los fines de la decisión del recurso, que dados
los términos en que está redactado el artículo 2 de la indicada
ley que dejamos transcrito, tengan derecho también a recla-
mar de acuerdo con sus disposiciones los empleados que
trabajan en oficinas donde se use maquinaria, siempre será
necesario reconocer que la sentencia apelada se sostiene
porque en la oficina en que trabajaba el demandante no exis-
tía maquinaria, como decidió la corte de distrito.

[2] El apelante en su alegato sostiene que la conclusión
a que llegara la corte sentenciadora, no está justificada por
la prueba. Realmente ningún testigo en forma concreta
declaró sobre el particular, pero se infiere de sus declara-
ciones que se trataba de una oficina corriente, separada de
los establecimientos de la central, para dirigir mentalmente
desde ella los negocios, llevando las cuentas y realizando todos
aquellos trabajos que estuvieran en armonía con sus fines.
En oficinas de esa naturaleza generalmente no hay maqui-
naria. Las máquinas de escribir y otras semejantes no son
las máquinas que tuvo en mente el legislador. Siendo ello
así no puede sostenerse que la conclusión de la corte no
estuviere justificada. Además era al demandante al que
correspondía demostrar que en la oficina en que trabajaba
se usaba maquinaria. Y no lo hizo.

[3] La circunstancia de que el demandante sufriera el
accidente mientras viajaba con dirección al sitio en que debía
practicar el inventario, trabajo que lo obligaría a penetrar

en sitios donde existían maquinarias, no cambia la naturaleza de su empleo.

Sostiene también el apelante que la ley se refiere a "oficinas y establecimientos comerciales" y que el negocio de la central era industrial exclusivamente.

La palabra "comerciales" guarda relación con la palabra "establecimientos", pero no necesariamente con la que le precede, "oficinas." La palabra "oficinas" tiene dentro de la ley vida aislada y abarca todo lo que pueda comprender en su amplio significado. Dicen los diccionarios que oficina es el "sitio donde se hace, se ordena o trabaja una cosa," el "sitio destinado para el trabajo de una secretaría, contaduría o cosa semejante."

No importa que el negocio de una central sea el de fabricar azúcar. Puede tener y generalmente tiene separadamente de sus establecimientos, como sucede en este caso, su oficina dedicada exclusivamente a dirigir sus asuntos.

Habiendo llegado a las anteriores conclusiones, se hace innecesario analizar el otro error señalado, a saber, que la corte sentenciadora erró al estimar que el accidente ocurrido al demandante no fué producto de las funciones inherentes de su trabajo o empleo, ni ocurrió dentro del curso de éste y por consecuencia del mismo.

*Debe confirmarse la sentencia recurrida.*